

THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at GREENBELT

| | |
|---|---|
| In Re: | |
| William A. Kisse | Case No.   12-11310-TJC |
| Debtor | Chapter   7 |

## MEMORANDUM OF DECISION

Janet M. Nesse, the Chapter 7 Trustee (the "Trustee"), brings this motion seeking an order approving a settlement pursuant to Fed. R. Bankr. P. 9019 between her and the chapter 7 debtor, William A. Kisse ("Kisse"). Docket No. 64. As pertinent here, the settlement proposes to divide the amounts in an investment account owned jointly between Kisse and his wife, Phyllis Newfield ("Newfield"). Newfield objects, arguing that the funds are held as tenants by the entireties and therefore exempt from property of Kisse's estate. The primary dispute between the parties is whether the law of Maryland or the District of Columbia applies to the account. The parties agree that if the law of the District of Columbia applies, there is a presumption that the funds are held as tenants by the entireties, and that the burden is on the Trustee to rebut the presumption. The Court held an evidentiary hearing on September 19, 2012, and the parties submitted post-trial briefs on September 27 and October 8, 2012. The Court concludes that the

1

law of the District of Columbia applies and the Trustee has not rebutted the presumption. The Court therefore concludes that Kisse and Newfield held the investment account as tenants by the entireties.

**Findings of Fact**

Kisse and Newfield were married in 1999 and have resided in Maryland since that time. The couple opened an account with Merrill Lynch in the Washington D.C. office. The account was titled as joint tenants with right of survivorship, though both testified that they did not understand the legal significance of this classification and could not recall any discussion about the way it was titled. Each made contributions to the Merrill Lynch account after it was opened. Neither withdrew money from the account without the knowledge and approval of the other party. *See* Ex. 8 and 9.

Newfield's business attorney recommended Wachtel & Co. as a good source for investment services. In October 2002, Kisse and Newfield went to the office of Wachtel & Co., located in Washington, D.C., to inquire into opening an investment account. Kisse and Newfield met with the principal of Wachtel & Co., Bonnie K. Wachtel ("Wachtel"), to discuss her investment strategy, their objectives, the commission schedule and the like. Kisse and Newfield had not decided prior to the meeting whether to invest with Wachtel & Co., but the meeting went very well. While Wachtel was out of the room attending to another matter, Kisse and Newfield agreed they really liked Wachtel and decided to invest with the company.

During the visit, Kisse and Newfield signed a document titled "Customer Cash Account" authorizing Wachtel & Co. to open a brokerage account for Kisse and Newfield (the "Wachtel Account") and to receive funds and investments transferred from other brokerage houses. Ex. 3. The information on the front of the document was prepared while Kisse and Newfield were

meeting with Wachtel, and was signed by Kisse, Newfield and Wachtel while in Wachtel's office. Wachtel signed it signifying that she accepted the account as a principal of Wachtel & Co. Newfield understood that by signing the "Customers Cash Account" document, she was agreeing to open an investment account at Wachtel & Co. The Customer Cash Account document is the document that served to create and open the Wachtel Account.

The "Customers Cash Account" document contains the letters JTWROS typed at the top. Ex. 3. Wachtel testified that it was her understanding that the account was to be held as joint tenants with right of survivorship because that is how the Merrill Lynch account was titled. There was no discussion as to why the Merrill Lynch account was titled in that fashion and there was no discussion about different ways to title the account. There was no discussion regarding the difference between an interest held as joint tenants with right of survivorship and tenants by the entirety. Kisse expressed a desire to have the account be a "joint account . . . that [] belonged to the both of us" but otherwise did not recall any discussion of the way the account was to be titled. Newfield also had no recollection of a discussion as to alternative ways of titling the account and it was her understanding that the money in the account was "our money" and "as much his as it was mine."

On October 7, 2002, Kisse and Newfield also executed a "Discretionary Trading Authorization Form," thereby authorizing Wachtel to make trades using the funds deposited in the Wachtel Account. Ex. 2. Wachtel believes she mailed the form to the parties in Maryland. They executed the form and returned it to Wachtel, where she executed it on October 12, 2002. Ex. 2. Wachtel could have continued to hold the Wachtel Account without the "Discretionary Trading Authorization" form as it only provided her the authority to use her discretion to trade on the parties' behalf.

On October 21, 2002, an initial transfer of $200,000.00 was wired from the Merrill Lynch account to the bank that Wachtel & Co. uses, Harris Bank, which is headquartered in Chicago, Illinois. Ex. 13 and 14 p. 3. The address of the Merrill Lynch branch listed on the request is 1850 K Street NW Washington DC. Ex. 13. Wachtel & Co. began trading with the funds contained in the Wachtel Account on October 23, 2002. Ex. 14 p. 3.

After opening the Wachtel Account, disbursements were made from time to time either to Kisse and Newfield jointly, or to one of them individually. However, whenever a disbursement was made to either as an individual rather than jointly, both spouses specifically authorized the disbursement of funds from the Wachtel Account. Ex. 4, 8 and 9.

Both spouses listed the Wachtel Account in personal financial statements that they submitted to banks. Newfield testified that she filed personal financial statements with banks in the past five years. She listed her interest in the Wachtel Account at half of the value of the account because it "seemed like the right thing to do" even though she believed it was "our" money. Before completing his personal financial statements, Kisse would call Wachtel to obtain current information about the account. As best he understood, he listed the total amounts on the personal financial statements.[1]

On January 27, 2012, Kisse filed a petition for relief under chapter 7 of the Bankruptcy Code. The Wachtel Account contained $122,626.00 as of that date. Ex. 15. On February 24, 2012, Kisse filed his Bankruptcy Schedules. Included in Kisse's Schedule B was his interest in the Wachtel Account.

Following the bankruptcy filing, funds from the account continued to be spent. E-mails between Kisse, Newfield and Wachtel indicate that funds from the Wachtel Account were

---

[1] Kisse's financial statements required an entry for both "cost" and "current market value" of the Wachtel Account. Kisse entered for both entries what he understood to be the total amount of the account, not one-half of the applicable amount.

4

disbursed to pay taxes. Ex. 7. Newfield testified that she withdrew $40,000.00 to make repairs to the roof of 9419 Overland Drive, Rockville Maryland where she and Kisse live, which is titled solely in her name. *See* Ex. 14 p. 31. Newfield withdrew the remaining balance of $80,334.40 from the Wachtel Account and used it to pay down the home equity line of credit on which both Kisse and Newfield were signees. Ex. 14 p. 32. Newfield testified that she did not initiate any financial transactions without her husband's knowledge or consent and that she gave the instructions to close out the account after discussing the decision with Kisse.

Kisse listed the Wachtel Account as being held as tenants by the entireties on his bankruptcy schedules, and he claimed it as exempt on his Schedule C for that reason. The Trustee objected to the exemption. To resolve the objection the Trustee and Kisse reached the settlement that is the subject of the instant motion.[2] Under the settlement, the funds in the Wachtel Account as of June 4, 2012 ($119,803.00) would be divided 55%/45% between Newfield and the bankruptcy estate, respectively, although the parties have agreed to alter those terms somewhat if the settlement is approved by the Court.

## Conclusions of Law

Although the parties dispute the ultimate issue of whether the Wachtel Account is held as joint tenants or as tenants by the entireties, they are in general agreement on a number of underlying applicable legal principles. The parties agree that if Maryland law applies then the Wachtel Account is held joint tenants with right of survivorship. The parties also agree that if District of Columbia law applies then a presumption exists that the Wachtel Account is held as tenants by the entireties and the Trustee has the burden to prove the contrary. They also agree that the choice of law determination is made by the doctrine of *lex loci contractus*. As agreed by

---

[2] The original compromise also included an EagleBank checking account in the amount of $877.28; however, Newfield has withdrawn her objection to that aspect of the settlement.

the parties, "[to] decide questions of validity of construction of contracts, Maryland adheres to the principle of *lex loci contractus*, under which the law of the jurisdiction where the contract was formed is applied unless otherwise agreed by the parties." *In re Wetzler*, 192 B.R. 109, 113 (Bankr. D. Md. 1996) citing *In re Chateaugay Corp.*, 170 Bankr. 551, 555 (S.D.N.Y. 1994). The Court will turn to the application of the facts to these undisputed legal doctrines.

*Choice of Law*

As a threshold matter the Court finds that the contract, whether between Kisse and Newfield or Newfield and Wachtel, was formed in the District of Columbia and the law from that jurisdiction applies to the parties' agreements. Kisse and Newfield had not made the decision to invest with Wachtel & Co. prior to meeting with Wachtel, for the first time, in her office in October 2002. After discussing Wachtel's investment strategy and commission schedule, Kisse and Newfield decided between themselves to invest with Wachtel & Co. during a moment alone in Wachtel's office. To memorialize this decision, the parties signed – at Wachtel's office - the document titled "Customer Cash Account" authorizing Wachtel & Co. to open a brokerage account in their name and receive funds for them. The "Customer Cash Account" document is the operative document creating the agreement between the parties. The later executed "Discretionary Trading Authorization" form, executed by Kisse and Newfield in Maryland, merely authorizes Wachtel to invest funds at her discretion without need for the specific approval of Kisse and Newfield.   Therefore, the agreement is governed by the laws of the District of Columbia.

*The Presumption was Not Rebutted.*

As the parties agree, District of Columbia law creates a rebuttable presumption that joint tenancy with right of survivorship for a married couple means tenancy by the entireties, and the Trustee carries the burden of rebutting that presumption. The presumption was not rebutted.

The Trustee argues that Newfield's and Kisse's conduct demonstrate that they intended the Wachtel Account to be joint tenants with right of survivorship. The Trustee notes that the marital home is titled solely in Newfield's name and argues that Newfield's use of funds from the Wachtel Account to repair the house and pay down the line of credit on the one hand, and Kisse's use of funds to pay taxes on the other, demonstrates that the funds were not used for marital purposes. Finally, the Trustee argues that Newfield and Kisse only listed half of the funds in the Wachtel Account when completing personal financial statements demonstrating that they intended the account to be a joint account and not a tenancy by the entireties.

The evidence does not demonstrate that Kisse and Newfield intended the funds in the Wachtel Account to be separate or to be held as anything other than tenants by the entireties. Neither spouse had a sophisticated understanding of legal title when they opened the account. Kisse stated that he wanted an account "that [] belonged to the both of us" and Newfield understood the Wachtel Account to be "as much his as it was mine." These lay person's descriptions are much more akin to an account owned as tenants by the entireties than to an account owned as joint tenants. [3]

---

[3] In *Morrison v. Potter*, the District of Columbia's Court of Appeals stated that:

> A tenancy by the entireties is "'essentially a joint tenancy, modified by the common-law theory that husband and wife are one person.'" (citing *Settle v. Settle*, 8 F.2d 911, 912 (1925)). The characteristics of a tenancy by the entireties are: a right of survivorship, an inability of one spouse to alienate his interest, and a broad immunity from claims by separate creditors.

764 A.2d 234, 236 (D.C. 2000) (internal citations omitted).

7

This is further supported by the correspondence between Kisse, Newfield and Wachtel, which reveals that all withdrawals were made either jointly to both husband and wife, or were authorized by both if the disbursement was being made to one alone. Ex. 8 and 9. This, too, more appropriately describes a tenancy by the entireties than a joint tenant arrangement. *See* n. 3.

The evidence before this Court does not prove that the taxes referenced in exhibit 7 were solely Kisse's taxes. It is equally plausible that the couple filed joint tax returns rather than separate returns. In any event, the agreement by one spouse that funds held as tenants by the entireties could be used to pay the individual obligations of the other spouse does not, by itself, evidence that the funds are not held as tenants by the entireties.

While the marital home is titled solely in Newfield's name, Kisse resides in the home and maintaining the upkeep of the marital home is a marital expense. Similarly, Newfield's use of funds from the Wachtel Account to pay down the equity loan on the house may have primarily benefitted her, as Kisse was no longer an obligor after receiving his discharge on May 14, 2012, but Kisse benefits from the marital home being maintained. Kisse also expressly authorized the disbursement of these funds.

Newfield's decision to list only half the funds in the Wachtel Account in her personal financial statements demonstrates, at best, that Newfield did not have a sophisticated understanding of legal titling. Her explanation - because it "seemed like the right thing to do" – evidences that she was motivated more by her sense of fairness and full disclosure rather than based on any understanding of the legal attributes of her ownership interest. Consequently, the Court does not find that Newfield's decision to list half of the value of the Wachtel Account demonstrates that she intended the funds to be separate.

Finally, the Trustee contends that Newfield lacks standing to challenge the settlement, but the settlement directly affects the disposition of funds that Newfield contends she owns as tenants by the entireties. Surely Newfield has a pecuniary interest in the settlement motion. *See Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985) (standing requires that the interested party have a pecuniary interest in the disposition of the assets at issue).

## Conclusion

For the reasons stated above, Newfield's objection to the settlement will be sustained to the extent it applies to the Wachtel Account. The settlement will be approved to the extent it addresses the EagleBank account.

Cc: Debtor
 Debtor's counsel
 Trustee
 United States Trustee
 Newfield
 Newfield's counsel

**END OF ORDER**